IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Allyn Bandell, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C/A No. 4:19-cv-03447-DCC-KDW |
| v. ) | |
| ) | |
| Sonoco Products Company; Martha ) | |
| Libby Schmitt; Charlie Schmitt; Bryan ) | **OPINION AND ORDER** |
| Michael Sansbury; Josh Hatchell; ) | |
| Edwin B Pate; City of Hartsville; ) | |
| Hartsville, LLC d/b/a Carolina Pines ) | |
| Regional Medical Center; Martha Libby ) | |
| Schmitt d/b/a J. Michaels Restaurant, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter comes before the Court on Defendant Hartsville, LLC d/b/a/ Carolina Pines Regional Medical Center's (hereinafter, "Defendant CPRMC") Motion to Dismiss. ECF No. 26. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (D.S.C.), this matter was referred to United States Magistrate Judge Kaymani D. West for pre-trial handling and a Report and Recommendation ("Report"). On July 21, 2020, the Magistrate Judge issued a Report recommending that the Motion be granted. ECF No. 87. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Plaintiff filed Objections, and Defendant filed a Reply. ECF Nos. 95, 97.

1

## BACKGROUND

This case arises out of an incident at a bar during which Plaintiff alleges that Brandon Schwarz ("the Decedent")[1] was attacked without provocation for his religious beliefs. Defendant CPRMC's involvement began when the Decedent was transported by ambulance to the CPRMC emergency room following the arrival of Hartsville Police Department ("HPD") officers on the scene.

Plaintiff alleges that the Decedent was not intoxicated but had a concussion. At the time of filing his Amended Complaint, the Decedent was unable to remember substantial portions of his visit to the emergency room. He recalled Defendant Pate, an HPD officer, standing next to his hospital bed and saying that he was giving him a traffic ticket and was not taking him to jail. Several hours later he remembered asking a nurse if he could leave. He then remembered Defendant Pate standing at his bedside telling him that he was taking him to jail. The HPD Incident Report stated: "The hospital called back later and advised us Schwarz needed a ride and could not get anyone to take him home. When I arrived at the hospital, I advised Schwarz he would be going to jail." ECF No. 15 at ¶ 71. Defendant Pate told the Decedent that "there were only three options: stay in the hospital, get a ride home, or go to jail," to which the Decedent replied, "I'll just stay here then." *Id*. at ¶ 79. Defendant Pate told the Decedent he could not stay because he had been discharged. Defendant Pate then arrested the Decedent and took him to jail, where he spent the night.

---

[1] On September 29, 2020, the Court entered an order granting substitution of Allyn Bandell as Plaintiff due to the original Plaintiff's death. ECF No. 93. Brandon A. Schwarz, the original Plaintiff, is herein referred to as "the Decedent."

Plaintiff asserts claims against CPRMC for negligence and negligent supervision based on "acts that occurred after the conclusion of medical care." *See id*. at ¶¶ 156–171; 26 n.3. Specifically, Plaintiff alleges that CPRMC was negligent in the following:

a. failure to appropriately assist Schwarz with transportation in his compromised mental and physical state,

b. by calling and/or communicating with the police about Schwarz in tandem with his discharge even when Schwarz was not a threat requiring law enforcement intervention,

c. the discharge resulted in Schwarz being incarcerated when he did not have a ride from the hospital,

d. failure to supervise and control individuals acting as an actual and apparent agent, servant, and employee of CPRMC,

e. failure to train staff on how to assist compromised patients with transportation from CPRMC, and

f. failure to stop the discharge once known that it would result in Schwarz's incarceration.

*Id.* at ¶ 161.

Plaintiff alleges that CPRMC negligently supervised its employees by failing to control their intentional, wrongful acts of (1) discharging the Decedent with the knowledge that his discharge would result in arrest and incarceration, and (2) intentionally calling and/or communicating with law enforcement upon the Decedent's discharge, which resulted in his arrest. *Id*. at ¶ 166.

## **STANDARD OF REVIEW**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify

3

the Report, in whole or in part. 28 U.S.C. § 636(b)(1). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2015) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (citation omitted)).

## DISCUSSION

### *Negligence*

As a preliminary matter, Plaintiff argues that the Report "recommends dismissal of Plaintiff's negligence claim based on a *sua sponte* argument that Defendant did not owe Plaintiff a duty and did not breach any duty to Plaintiff." ECF No. 95 at 3. This Court disagrees with the characterization of the Magistrate Judge's findings as "*sua sponte*." The foundation of Defendant CPRMC's argument is that CPRMC owed no duty of care to Plaintiff other than that arising out of the provider-patient relationship and subject to S.C. Code Ann. § 15-79-125. *See, e.g.*, ECF No. 23-1 at 8 ("[T]here is no common law duty or statutory requirement for a hospital to arrange post-discharge transportation for its patients."). The Magistrate Judge agreed that no duty was owed outside the scope of the provider-patient relationship. Accordingly, the Court does not consider that the Magistrate Judge's recommendation was *sua sponte* or in any other sense improper.[2]

---

[2] Even a *sua sponte* recommendation of dismissal would not have been improper in light of Plaintiff's ample opportunity to respond. "[T]he court is authorized to dismiss a claim *sua sponte* under Federal Rule of Civil Procedure 12(b)(6), as long as there is notice and an opportunity to be heard." *Sheehan v. Saoud*, 650 F. App'x 143, 152 (4th Cir. 2016) (citations omitted). *See also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed 2016) ("Even if a party does not make a formal

4

The Court agrees with the Magistrate Judge that Plaintiff's negligence claim against Defendant CPRMC is not subject to the requirements of S.C. Code Ann. § 15-79-125. Although most claims by a patient against a hospital will sound in medical malpractice, claims based on the hospital's "nonmedical, administrative, ministerial, or routine care" sound in ordinary negligence.[3] *Dawkins v. Union Hosp. Dist.*, 758 S.E.2d 501, 504 (S.C. 2014). Plaintiff disavows any intention to plead medical malpractice and explicitly bases her claim on Defendant CPRMC's communication with law enforcement and failure to prevent the Decedent's arrest. The Court therefore finds that compliance with § 15-79-125 was not required and will address Plaintiff's negligence claim on its merits.

First, Plaintiff argues that Defendant CPRMC was negligent in "unreasonably calling the police instead of allowing or assisting [the Decedent] to arrange alternative transportation from the hospital," resulting in the Decedent's arrest.[4] ECF No. 95 at 4–5.

---

motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties.").

[3] To the extent Plaintiff's negligence claim is based on Defendant CPRMC's decision to discharge the Decedent or the timing of that discharge, the Court agrees that it is barred by Plaintiff's failure to meet the requirements of § 15-79-125. See ECF No. 87 at 7.

[4] Defendant CPRMC contends that the Amended Complaint "alleges Schwarz had already been arrested at the scene of the Incident prior to being transported to CPRMC." ECF No. 97 at 6. The timing of the Decedent's arrest is unclear. The Amended Complaint alleges that "Hartsville PD body camera video shows the police, upon arrival, saying they were going to arrest Schwarz" and that the Decedent was "[u]ltimately" arrested. ECF No. 15 at ¶ 57. However, it does not state unequivocally that the Decedent was actually arrested at the time of HPD's arrival on the scene. Viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences therefrom, the Court construes

5

Calling HPD was unreasonable because the Decedent "was not a threat requiring law enforcement intervention."  ECF No. 15 at ¶ 161(b).  Upon examination, the Court finds no allegation in the Amended Complaint that Defendant CPRMC or its employees refused to allow the Decedent to arrange his own alternative transportation.  The Amended Complaint does, however, allege that Defendant CPRMC called HPD to advise them that the Decedent "needed a ride and could not get anyone to take him home."  *Id*. at ¶ 71.

Plaintiff cites no authority for the proposition that calling the police, even "unreasonably," subjects an individual or entity to civil liability for a subsequent arrest.  In any event, nothing in the Amended Complaint suggests that CPRMC's call was unreasonable.  The Decedent was transported to the hospital at HPD's behest and Officer Pate was present during part of his hospital stay.  *Id*. at ¶¶ 63, 66.  Plaintiff does not allege that Defendant CPRMC knew the names of any other individuals who could have served as emergency contacts for the Decedent.  In making its call, Plaintiff does not allege that Defendant CPRMC made a false report, misrepresented the Decedent's actions, or in any way encouraged or requested the Decedent's arrest.

Even assuming the existence of some duty by a hospital to refrain from facilitating a patient's allegedly unlawful arrest, Plaintiff has not shown that the purported harm (Decedent's unlawful[5] arrest and incarceration) was foreseeable.  Based on the

---

the Complaint, for the purposes of this Motion, to allege that the Decedent was not arrested until after his discharge from the hospital.

[5] The Court assumes arguendo that the Decedent's arrest was unlawful *only* for purposes of this specific Motion.  References in this Order to the Decedent's "unlawful arrest" do not indicate any finding by the Court that the Decedent's arrest was actually unlawful.

allegations in the Amended Complaint, Defendant CPRMC could not reasonably have anticipated that its call to HPD regarding the Decedent's need for a "ride . . . home," *id*. at ¶ 71, would result in his arrest. Nor does Plaintiff explain how Defendant CPRMC could have known that the Decedent's arrest, if it occurred, would be unlawful. Plaintiff does not claim that the arrest was carried out in an unlawful manner (e.g., with excessive force) but only that it was unlawful because probable cause did not exist. *See* ECF No. 15 at ¶¶ 175, 185, 194. That argument arises from the circumstances at the scene of the incident prior to the Decedent's transportation to CPRMC. *E.g.*, *id*. at ¶ 181 ("HPD had improper ulterior purposes for charging and arresting Schwarz, who was the victim of assault, instead of properly investigating and arresting the assailants[.]"); ¶ 185 ("[HPD] could visibly see that Schwarz was bruised and bleeding. Schwarz was not a danger to anyone present. It was visibly clear to [HPD] that Schwarz was the wounded victim of assault and battery. There were no other wounded individuals present."). No agent or employee of Defendant CPRMC was present at the scene of the incident to observe HPD's investigation or lack thereof, and Plaintiff alleges no knowledge on the part of CPRMC about the specific circumstances of the investigation. Whatever the exact scope of Defendant CPRMC's duties to the Decedent, they did not include a duty to refrain from otherwise non-tortious actions that caused unforeseeable harm by a third-party police department. Plaintiff has demonstrated neither duty nor breach, and the Court finds that the facts in the Amended Complaint do not state a claim for negligence based on Defendant CPRMC's call to HPD.

Plaintiff likewise provides no legal support for her assertion that Defendant CPRMC was negligent in failing to assist the Decedent with arranging "alternative transportation" from the hospital. ECF Nos. 95 at 4–5; 15 at ¶ 161(a). Plaintiff has not, in the first instance, demonstrated a hospital's duty to arrange *any* transportation for patients after discharge. The common law "[g]enerally . . . does not impose any duty to act." *Vaughan v. Town of Lyman*, 370 S.C. 436, 441 (2006)  Assuming arguendo that such duty existed here, the Amended Complaint makes clear that Defendant CPRMC affirmatively arranged transportation for the Decedent by calling HPD and telling the officers that the Decedent "needed a ride." ECF No. 15 at ¶ 71. Defendant CPRMC's alleged negligence must therefore be based on the particular form of transportation arranged rather than the failure to arrange any transportation at all. Again, based on Plaintiff's allegations, Defendant CPRMC had no reason to foresee that transportation by HPD would lead to the Decedent's arrest or that such arrest if it occurred would be unlawful. Plaintiff's allegations do not plausibly state a breach of duty by Defendant CPRMC in this respect. Plaintiff's separate but related allegation of "failure to train staff on how to assist compromised patients with transportation from CPRMC," ECF No. 15 at ¶ 161(e), is unsupportive of her negligence claim for the same reasons.

Finally, Plaintiff claims Defendant CPRMC breached its duty to the Decedent by its "failure to stop the discharge once known that it would result in Schwarz's incarceration." ECF No. 15 at ¶ 161(f). Once again, Plaintiff provides no legal authority to establish this duty and the Court's independent investigation has revealed none. In some jurisdictions and under some circumstances, hospitals may have a duty to protect

patients from the foreseeable tortious acts of third persons.  See *Nonis v. Middlesex Cnty. Sheriff's Office*, 2013 WL 5477144, at *7 (D.N.J. Sept. 30, 2013) (collecting cases); *Wnek v. City of Philadelphia*, 2007 WL 1410361, at *5 (E. D. Pa. May 10, 2007) (same).  But again, even assuming at this stage of the proceedings that the Decedent's arrest was unlawful, Plaintiff has alleged no facts to suggest that Defendant CPRMC knew or should have known of its unlawfulness.

Plaintiff's reliance on *Madison v. Babcock*, 638 S.E.2d 650 (S.C. 2006), is inapposite.  In that case the plaintiff, who had significant mental disabilities, snuck out of her residential facility at night and was raped by third parties.  The Supreme Court of South Carolina held that "a private person or business entity which accepts the responsibility of providing care, treatment, or services to a mentally retarded or disabled client has a duty to exercise reasonable care in supervising the client and providing appropriate care and treatment to the client." *Id*. at 658.  This constituted an exception to the general rule that "there is no general duty to control the conduct of another or to warn a third person or potential victim of danger." *Id*.  There are obvious factual distinctions between this case and *Madison*.  More importantly, *Madison* simply does not establish that the scope of "reasonable care" includes preventing an arrest that the hospital could not reasonably have known to be unlawful.

Sustaining Plaintiff's negligence claim "would place hospitals in the unreasonable and untenable position of having to monitor and supervise police activity." *Wnek*, 2007 WL 1410361, at *5.  It seems clear to this Court that being released into police custody, however inconvenient or undesired, is not the kind of "danger" contemplated by the

9

Supreme Court of South Carolina. Indeed, "resist[ing] an arrest being made by one whom the person knows or reasonably should know is a law enforcement officer" is a misdemeanor under South Carolina law. S.C. Code Ann. § 16-9-320. Defendant CPRMC had no legal duty to recognize that the Decedent's earlier conduct did not constitute probable cause for an arrest, to deduce that the arrest was therefore unlawful, and to protect the Decedent from arrest or incarceration by HPD following his discharge. The Magistrate Judge's recommendation is therefore adopted with respect to Plaintiff's claim of negligence.

**Negligent Supervision**

The Magistrate Judge recommended dismissal of Plaintiff's negligent supervision claim against Defendant CPRMC because, as found with respect to her negligence claim, there was no duty owed and no "initial act of negligence." ECF No. 87 at 9. Plaintiff objects on the basis that the elements of a negligent supervision claim differ from those of a negligence claim. ECF No. 95 at 6.

The Amended Complaint alleges that Defendant CPRMC negligently failed to exercise control over employees who "intentionally harmed" the Decedent by (1) discharging him with the knowledge that discharge would result in his arrest and (2) calling and/or communicating with HPD with the same. ECF No. 15 at ¶ 166. Under South Carolina law an employer is liable for the intentional wrongful acts of employees acting outside the scope of employment[6] where:

---

[6] Defendant CPRMC argued in its Motion that "a negligent supervision claim arises only when an employee acts outside the scope of his or her employment." ECF No. 26-1 at 11. It is debatable, at best, that the Amended Complaint alleges any acts by CPRMC

10

    (a) [the employee]
        (i) is upon the premises in possession of the [employer] or upon which the [employee] is privileged to enter only as his [employee], or
        (ii) is using a chattel of the [employer], and
    (b) [the employer]
        (i) knows or has reason to know that he has the ability to control his [employee], and
        (ii) knows or should know of the necessity and opportunity for exercising such control.

*Degenhart v. Knights of Columbus*, 420 S.E.2d 495, 496 (S.C. 1992) (quoting Restatement (Second) of Torts § 317 (1965)).

There is no need to parse the elements of the claim in this case because it fails at the outset. The Amended Complaint alleges no intentional torts by CPRMC employees. Despite Plaintiff's contention that these allegations are "wholly different" from those supporting her negligence claim, ECF No. 95 at 6, they are insufficient for essentially the same reasons. Neither Defendant CPRMC nor its employees had any reason to believe that discharging the Decedent or communicating with HPD about the Decedent's transportation would lead to the Decedent's unlawful arrest. These actions were not negligent, let alone intentionally wrongful, and Plaintiff accordingly fails to state a claim for negligent supervision.

---

employees outside the scope of employment. *See, e.g.*, ECF No. 15 at ¶ 158 (alleging that "CPRMC's employees were acting within the scope of their employment" in communicating with HPD). However, because Plaintiff's negligence supervision claim fails on other grounds, the Court declines to decide the scope of employment issue.

***Certification***

Lastly, Plaintiff requests that the question of whether Defendant CPRMC owed a duty of care to the Decedent be certified to the Supreme Court of South Carolina. ECF No. 95 at 8–9.

This Court may certify questions of state law to the Supreme Court of South Carolina pursuant to Rule 244 of the South Carolina Appellate Court Rules ("SCACR"). Certification, where available, is meant to resolve an "uncertain question of state law whose resolution might affect the pending federal claim." *Houston v. Hill*, 482 U.S. 451, 471 (1987). Pursuant to the *Erie*[7] doctrine, federal courts regularly interpret state law in the absence of directly controlling precedent. *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994) (citations omitted). "Only if the available state law is clearly insufficient should the court certify the issue to the state court." *Id*. (citation omitted); *see also Cleary v. Philip Morris Inc.*, 656 F.3d 511, 520 (7th Cir. 2011) ("The most important consideration guiding our decision to certify a question . . . is whether the reviewing court finds itself genuinely uncertain about a question of state law that is vital to a correct disposition of the case.") (internal quotation marks and citation omitted). Even where it is appropriate, certification is not mandatory. *Lehman Bros. v. Schein*, 416 U.S. 386, 390–91 ("We do not suggest that where there is doubt as to local law and where the certification procedure is available, resort to [certification] is obligatory.")

---

[7] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

The Court finds no valid basis for certification in the present case. Plaintiff does not identify any discrete question of state law that is unresolved or unclear. Rather, she urges that her case presents a novel set of facts. ECF No. 95 at 7 ("The series of events that destroyed Brandon Schwarz's life seem to have no parallel in South Carolina jurisprudence."). The Court finds that the available state law is sufficient to decide Plaintiff's claims, as explained above, and there is no genuine uncertainty about the application of existing precedent to this set of facts. Plaintiff's request for certification is denied.

## CONCLUSION

For the reasons set forth above, the Court **OVERRULES** Plaintiff's Objections [95] and **ADOPTS** the Report [87]. Defendant CPRMC's Motion to Dismiss [26] is **GRANTED** and all claims against Defendant CPRMC are **DISMISSED WITHOUT PREJUDICE**.[8]

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.<br>
United States District Judge

November 18, 2020
Spartanburg, South Carolina

---

[8] Because the deadline to amend the pleadings has passed, *see* ECF No. 34, the Complaint may only be amended with the written consent of Defendants or by leave of the Court. *See* Fed. R. Civ. P. 15(a)(2).